UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT ASHLAND

CIVIL ACTION NO. 24-1-DLB

ELIJAH STONE                                                                                           PETITIONER

v.                              **MEMORANDUM OPINION AND ORDER**

WARDEN DAVID LEMASTER,                                                                RESPONDENT

\*\*\* \*\*\* \*\*\* \*\*\*

I.     **Factual and Procedural Background**

In July 2023, while housed at the Federal Correctional Institution in Ashland, Kentucky ("FCI Ashland"), Petitioner Elijah Stone was disciplined for attempted tattooing or self-mutilation.[1]  His sanctions included time in disciplinary segregation and the loss of 27 days of good time credit.  On January 2, 2024, Stone filed a *pro se* habeas corpus petition under 28 U.S.C. § 2241 challenging the imposition of sanctions.  *See* Doc. # 1.  Stone raises several due process challenges to the disciplinary procedures applied in his case and suggests that there was insufficient evidence to support his charge.  For relief, he seeks expungement of the disciplinary sanction and corresponding adjustments to his security level.

The Respondent, Warden David LeMaster, has filed a response opposing Stone's petition.  *See* Doc. # 10.  In support, LeMaster has provided an affidavit from Tomeka

---

[1] Stone is currently serving a 180-month term of imprisonment based on convictions in this Court for conspiring to distribute 50 grams or more of methamphetamine and possessing a firearm in furtherance of a drug trafficking crime.  *See United States v. Stone*, No. 2:17-CR-8-DLB (E.D. Ky. Oct. 20, 2017).

Sutton, who is a Discipline Hearing Officer ("DHO") at FCI Ashland. *See* Doc. # 10-1. Sutton reports that, on July 11, 2023, Senior Officer Specialist R. Wynn prepared Incident Report 3796334 charging Stone with a violation of Prohibited Act Code 228, tattooing or self-mutilation. The report provides:

> On 7-11-2023 at approximately 13:05 I [O]fficer R. Wynn was conducting a random round when I was walking past room K-01-014 I noticed inmate [redacted] was wearing a pair of blue medical gloves. Inmate Stone #21464-032 was sitting with his shirt off facing inmate [redacted]. I told inmate Stone to turn around. When he turned around, I noticed his right arm was red with appeared to be fresh ink consisting of being a new tattoo. I noticed laying in the floor of cell K01-014 was a white towel with a wire running out of it. When I recovered the towel, it contained a homemade tattoo gun, battery pack, and needle. All tattoo paraphernalia was forwarded to the Lieutenant's office.

*See* Docs. # 10-1, p. 2; 10-2, p. 1 (Incident Report 3793664).

Lieutenant R. Mayes delivered the written incident report to Stone later that same day. *See* Doc. # 10-1, p. 2. Lieutenant D. McCallister then advised Stone of his rights and began a disciplinary investigation. *Id.* at p. 3. Stone had no comment after hearing the charge and the factual basis for it. Relying on photographs of the contraband, the incident report, and his belief in the impartiality of the reporting officer, McCallister completed his investigation and forwarded the incident report and investigation to the Unit Disciplinary Committee ("UDC"). *See* Doc. # 10-2, p. 3 (McCallister Report).

The UDC conducted a hearing on July 13, 2023. Stone was present but again declined to make a statement. At the conclusion of that hearing, the UDC referred to the charge to the DHO. *See id.* at p. 2 (UDC Report). A DHO hearing was held on July 20, 2023. *See id.* at p. 9 (DHO Report). Therein, DHO Sutton noted that Lieutenant Mayes had provided Stone with advance written notice of the charge on July 11, 2023. Further, Sutton confirmed that Stone had received a copy of the report and had been advised of

2

his rights on July 13, 2023. *See id.* Stone advised the DHO that he did not wish to request a staff representative or call witnesses.

According to Sutton, Stone responded to the charge by stating: "He thought he saw me getting a tattoo, but I was not." *Id.* At the conclusion of the hearing, Sutton determined that Stone was guilty of *attempted* tattooing or self-mutilation and sanctioned him with the loss of 27 days of good conduct time, 20 days of disciplinary segregation (suspending 180 days), and the loss of commissary and phone privileges for 120 days. *Id.* at p. 11. Sutton prepared a written report of her findings, which was delivered to Stone on October 19, 2023. *See id.* at p. 12. Sutton fully exhausted administrative relief, which was denied. *See* Doc. # 10, p. 9.

Stone argues that he was denied due process in several ways: He asserts that prison officials did not sign the incident report correctly; that the incident report was vague; that an official who responded to the incident was Chairman of the UDC; that he was denied the opportunity to examine the evidence and confront his accusers; that he was not provided the DHO report in a timely manner; and that he was kept in the special housing unit five days longer than necessary.

**II.   Analysis**

The due process to which prisoners are entitled during the prison disciplinary process is set forth in 28 C.F.R. §§ 541.1 through 541.8 and in *Wolff v. McDonnell*, 418 U.S. 539 (1974). Where, as here, a prison disciplinary hearing may result in the loss of good time credits, due process requires that the inmate receive written notice of the charges at least 24 hours in advance of the disciplinary hearing; a written statement by the factfinder regarding the evidence relied upon and the reasons for the disciplinary

3

action; an opportunity to call witnesses and present documentary evidence when doing so would not be unduly hazardous to institutional safety or correctional goals; and the assistance of staff or a competent inmate when the inmate is illiterate or when the issues are complex. *Wolff*, 418 U.S. at 564-70. Stone has not alleged any facts suggesting that the officials at FCI Ashland failed to comply with these procedures. Thus, Stone's due process claims are without merit.

Despite the clear deficiency of Stone's due process claims, the Court will address his individual arguments briefly. First, there is no legal requirement that an incident report be signed at all, let alone in any particular form. *See Cadet v. Warden FCI Ashland*, No. 24-100-DLB, 2024 WL 4681552, at *2 (E.D. Ky. Nov. 5, 2024); *Lytle v. Warden, FCI-Bennettsville*, No. 5:26-CV-2277-TMC-KDW, 2018 WL 4560573, at *10 (D.S.C. Mar. 30, 2018), *report and recommendation adopted*, 2018 WL 4178448 (D.S.C. Aug. 31, 2018) (observing that "*Wolff* does not require any specific signature on a notice document").

Next, to the extent Stone argues that the incident report describing his offense was vague, he has not explained how he was prejudiced by the purported lack of detail, as he was provided multiple opportunities to make a statement, present evidence, and call witnesses on his own behalf. *See* 28 C.F.R. §§ 541.5(b)(2), 541.8(f). Stone also has failed to explain how he was prejudiced by Officer Todd's involvement in the proceedings. According to Stone, Todd was one of the officers who responded to the incident and he also served as Chairman of the UDC. Title 28 C.F.R. § 541.7(b) provides that UDC members "will not be victims, witnesses, investigators, or otherwise significantly involved in the event." But Stone has not alleged that Todd falls into any of the excluded categories, as there is no indication that Todd had any involvement in the incident other

than merely responding. Moreover, as the Respondent points out, inmates charged with high severity level prohibited acts, such as tattooing, are automatically referred to the DHO. *See* 28 C.F.R. § 541.7(a)(4). Accordingly, Todd did not exercise any discretion in the matter and merely had Stone sign the acknowledgement forms and referred the matter to the DHO.

Next, Stone contends that he was deprived of due process because he was not allowed to examine the evidence and face his accusers at the DHO hearing. But there is no requirement that an inmate be afforded these opportunities in disciplinary proceedings. *See Wolff*, 418 U.S. at 567-68; *Konopa v. McGrew*, No. CV 13-9370-VAP (SP) 2015 WL 1383573, at *4 (C.D. Cal. Mar. 20, 2015) (citing *Wolff*, 418 U.S. at 563-71). Stone's argument regarding the timeliness of the DHO report also is unavailing. BOP Program Statement 5270.09 provides that the prisoner ordinarily will receive a written copy of the DHO decision within 15 working days of decision. BOP Program Statement ("PS") 5270.09 CN-1 (Nov. 18, 2020). However, the prison's failure to provide a copy of the decision within that period does not automatically result in a due process violation. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985) (providing that an agency's failure to strictly comply with its own policies does not violate due process). Stone has not identified any prejudice based on the alleged delay of his receipt of the report and he went on to fully exhaust his administrative remedies. *See Adams v. Warden, United States Penitentiary at Big Sandy*, No. 7:20-CV-05-WOB, 2020 WL 7233348, at *2 (E.D. Ky. Dec. 8, 2020) ("By its terms, the regulation contemplates that under certain circumstances notice may be delayed, and hence it does not create an inflexible rule demanding compliance within a strict timeframe.").

5

Finally, Stone contends that his detention in the SHU for five days constitutes a due process violation. However, Stone was sanctioned to 20 days in the SHU, granted that placement was to be suspended for 120 days. Still, disciplinary segregation for up to six months is an approved sanction for high severity level prohibited acts such as tattooing or self-mutilation. *See* BOP Program Statement ("PS") 5270.09 CN-1 (Nov. 18, 2020). *See also* 28 C.F.R. § 541.3 (providing that "aiding, attempting, abetting, or making plans to commit any of the prohibited acts is treated as the same as committing the act itself"). Accordingly, it is unclear how Stone's placement in the SHU for five days could amount to a due process violation.

Stone also challenges the sufficiency of the evidence against him, alleging that some of the evidence used against him was found in another cell, that the evidence collected during the incident was incapable of producing a tattoo, and that a medical examination immediately after the incident revealed no evidence of a recent tattoo. (Doc. # 1) Based on these claims, he suggests that the reasons offered to justify the imposition of sanctions are not supported by "some evidence" in the record as required by *Superintendent v. Hill*, 472 U.S. 445 (1985). *See also Selby v. Caruso*, 734 F.3d 554, 558-59 (6th Cir. 2013). In *Hill*, the Supreme Court explained that the relevant question under this standard "is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." 472 U.S. at 454-55. The *Hill* standard is a lenient one, requiring only a "modicum of evidence" to support the outcome, and is met if the record contains *any* evidence that could support the DHO's decision. *Id.* at 455-56.

Stone does not deny that tattooing paraphernalia was located inside his cubicle on July 11, 2023. Rather, he insists that no actual tattooing took place and the materials in

6

his cubicle were not capable of producing a tattoo because they lacked a barrel and a sharpened needle.  (Doc. # 1-1, p. 4)  In support of his claim, Stone has provided the declaration of fellow inmate Kristopher Tremblay, the purported owner of the "homemade tattoo gun and battery pack" found in Stone's area.  (Doc. # 1-2)  However, Stone could have presented these arguments and testimony before the DHO and did not.  This Court cannot consider them now for this first time in a § 2241 proceeding.  *See Denny v. Schultz*, 708 F.3d 140, 144 (3d Cir. 2013) (noting that "the 'some evidence' standard is a standard of appellate review to be applied by the district court rather than a burden of proof in a prison disciplinary proceeding"); *Flannagan v.* Tamez, 368 F. App'x 586, 588 n.5  (5th Cir. Mar. 5, 2010) (noting that the reviewing court does not consider evidence that was not before the DHO at the time he made his decision); Hamilton *v. O'Leary*, 976 F.2d 341, 346 (7th Cir. 1992) ("only evidence that was presented to the [DHO] is relevant" to the "some evidence" inquiry).

      The Court's task is limited to considering the evidence that was before the DHO and determining whether it included "some evidence" to conclude that Stone was guilty of attempted tattooing.  *See, e.g., Kenner v. Martimer*, 2008 WL 2355832, at *3 (E.D. Ky. June 6, 2008).  It is undisputed that Stone was sitting shirtless in his cubicle, he was facing another inmate who was wearing medical gloves, that Stone's arm was red, and tattooing equipment was located in the cell.  The DHO also was swayed by Stone's lack of comments at the beginning of the disciplinary process as she believed that "an innocent person would have wanted to provide a reasonable explanation or offer some type of rationale for the alleged misconduct. . . ."  *See* Doc. # 10-2, p. 11.  The DHO was unpersuaded by Stone's denial during the DHO hearing and found no obvious reason for

7

the reporting staff to fabricate the incident report and believed the observation was made strictly in the performance of their official duties. This evidence more than satisfies the "some evidence" standard necessary to uphold the DHO's finding that Stone engaged in attempted tattooing.

Finally, Stone has filed a "motion to include," in which he asks the Court to consider a BOP Health Services record from July 11, 2023. Therein, Jody Sands, R.N. documented that Stone was being seen "for a new tattoo to his right inner arm," which he admitted having received in "KA unit" that day. Stone contends that Sands falsified the record, which he asserts is obvious based on the inclusion of a statement that his arm had "[n]o redness or drainage." The Court considers the record to the extent it is among the records relied upon by the DHO. *See* Doc. # 10-2, p. 5. However, the medical record is not obviously fabricated as Stone suggests and, in any event, only strengthens the Court's conclusion that the DHO's determination was supported by "some evidence."

### III.    Conclusion

Based on the foregoing analysis, it is hereby **ORDERED** as follows:

1. Stone's motion to include (Doc. # 13) is **GRANTED**.
2. Stone's petition for a writ of habeas corpus (Doc. # 1) is **DENIED**.
3. The Clerk shall **dismiss** this matter and **strike** it from the Court's active docket.
4. The Court will enter a corresponding **Judgment**.

This 3rd day of December 2024.



Signed By:
David L. Bunning
United States District Judge